

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2158 | **DATE** | 1/17/2001 |
| **CASE TITLE** | Williams vs. Carter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the Defendants' Motion for Summary Judgment [#31] is GRANTED. All matters having been terminated, this case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 2 2 2001 date docketed | 35 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mrl | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| KURTIS M. WILLIAMS, (N-53299) | |
| Plaintiff, | No. 99 C 2158 |
| v. | |
| Warden CARTER, Major JOHNSON, DEBRA WILSON, Lt. BURGESS, Corrections Officer TERO, Corrections Officer ALEXANDER, and Corrections Officer HOWARD, | The Hon. David H. Coar |
| Defendants. | |

DOCKETED
JAN 2 2 2001

## MEMORANDUM OPINION AND ORDER

Kurtis Williams,[1] an inmate at the Joliet Correctional Center ("JCC"), sued various prison officials for damages from injuries he sustained when an inmate named Maurice Browning assaulted him. Williams' theory is that these defendants violated his rights under the Eighth Amendment to the United States Constitution – as it is applied to the states through the Fourteenth Amendments's Due Process Clause – by failing to protect him from Browning's assault.[2] According to Williams, the Defendants' failure amounted to cruel and unusual punishment. At the close of discovery, the Defendants moved for summary judgement. For the reasons stated below, this Court GRANTS the Defendants' motion for summary judgment.

### Facts

Kurtis Williams has been incarcerated at the Joliet Correctional Center since his transfer from a Florida prison in November 1997. On April 20, 1998, Williams was housed in Joliet's segregation

---

[1] Although Williams is sometimes referred to as "inmate Burton" by various defendants, this Court will use the name in which Williams himself chose to sue these defendants.

[2] Williams also claimed that the defendants denied him due process with respect to the grievance procedures, but that count is no longer before the Court.

35

unit. The segregation unit in which Williams was housed also housed other inmates being disciplined for, among other things, inmate-on-inmate assaults. Williams was housed in segregation because he had been caught running an illegal lottery or "numbers" game based on the Illinois lottery. On April 20, Lieutenant Burgess and Officers Alexander, Howard, and Tero escorted Williams and a handful of other inmates to an exercise yard.

Going from their cells to the exercise yard, Williams and the others were in foot shackles, waist chains, and hand cuffs. When the inmates arrived outside the exercise yard, each had his shackles removed. The inmates were then let into the yard, still in waist chains and handcuffs, so that one by one, they could back up to a "chuck hole" to have their waist chains and hand cuffs removed. When the inmates were let into the yard, Officer Howard was escorting an inmate to an exercise yard to play basketball. Howard was approximately eighty feet from the rest of the inmates in Williams' group. Lieutenant Burgess and Officers Alexander and Tero were outside the yard.

An inmate named Maurice Browning was first to have his waist chains and hand cuffs removed. Almost immediately after having his restraints removed, Browning attacked Williams, punching and kicking him several times. When Browning began to attack Williams, Lieutenant Burgess ordered him to stop and called for Officer Howard to help restrain Browning. According to Williams, Lieutenant Burgess and Officers Alexander and Tero did not enter the yard to stop Browning's attack because Howard had the only key to the yard. Browning stopped, but on his own accord and then returned to the chuck hole as ordered. Browning then had his handcuffs and waist chains re-secured. Lieutenant Burgess and Officers Alexander and Tero then escorted Browning back to segregation and sought medical attention for Williams. Browning's attack lasted approximately 30 to 40 seconds.

Prior to Browning's attack, Williams never told any of the defendants that Browning had threatened him. Williams had also never identified Browning as a known enemy. In fact, there was no prior relationship between Browning and Williams. Further, at least two of the defendants have testified that they have never witnessed an inmate-on-inmate assault of this type. Finally, Williams has not identified himself as belonging to a class of people – e.g., transsexuals with feminine characteristics – who would be particularly vulnerable to attack.

**Analysis**

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. The prohibition of cruel and unusual punishments has been applied to the states through the Fourteenth Amendment's Due Process Clause, see, Robinson v. California, 370 U.S. 660 (1962), and forbids the use of excessive force against inmates. See, e.g., Hudson v. McMillian, 503 U.S. 1 (1992). Also, it affirmatively requires that prison officials provide adequate food, clothing, shelter, and medical care and "take reasonable measures to guarantee the safety of the inmates," for example by taking steps to protect individuals from inmate-on-inmate violence in certain circumstances. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (citations and internal marks omitted). As the Supreme Court noted, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

That said, however, not every instance of inmate-on-inmate violence is a cruel and unusual punishment for its victim. The Supreme Court has held that "a prison official violates the Eighth Amendment only when two requirements are met." Farmer, 511 U.S. at 834. First the inmate must show that he was confined under conditions "posing a substantial risk of serious harm." Id. (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). Second, the inmate must show that the official was

"deliberately indifferent" to the inmate's health or safety. Id. Plaintiffs do not need to show that the official acted or failed to act thinking that the harm definitely would occur to the inmate. But, to constitute deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and [t]he [official] must draw that inference." Id. at 837.

Williams claims that the defendants knowingly disregarded a risk that Browning would assault him while his waist chains and hand cuffs were still secured. Even assuming that uncuffing inmates in series presents a substantial risk of serious harm – an assumption that this Court makes only to reach the cleaner dispositive issue of deliberate indifference – Williams has presented absolutely no evidence that these defendants knew of and consciously disregarded this risk. Williams has not even put forth evidence that this type of unprovoked attack had ever occurred before at JCC, let alone that the defendants knew about it. In fact, several of the defendants specifically testified that they were unaware whether such an attack had ever taken place. Also, Williams never told any of the defendants that Browning posed or made any threat to him. In fact, according to Williams, he and Browning had no past history with one another. Thus, it cannot be said that the defendants knowingly disregarded a risk of attack from Browning on Williams and his claim must therefore fail. See, e.g., Tullis v. Detella, No 98 C 352, 1999 WL 90650 at *3 (N.D. Ill. Feb. 10, 1999).

Williams has presented one piece of evidence that deserves some comment but need not detain the Court long from its final conclusion. According to Williams, Lieutenant Burgess gave the only yard key to an officer who was about thirty paces away when the attack occurred. Relinquishing the key was contrary to a JCC regulation. Williams argues that this is the problematic part of the defendants' case. It is not. The evidence says nothing about whether a substantial risk

-4-

of serious harm existed and more importantly says nothing about whether the defendants knew about the risk. Essentially, Williams is arguing that the defendants were negligent in entrusting the key to an unauthorized person and that negligence prevented the defendants from more quickly stopping Browning's unprovoked and random attack of Williams. Contrary to Williams' implication, "ignoring internal prison procedures does not mean that a constitutional violation has occurred." Langston v. Peters, 100 F.3d 1235, 1237 (7th Cir. 1996). And, negligence – even if it was present here – is not sufficient to support an Eighth Amendment claim. Farmer, 511 U.S. at 835 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)) ("deliberate indifference describes a state of mind more blameworthy than negligence.").[3]

## Conclusion

For the reasons stated above, this Court GRANTS the Defendants' Motion for Summary Judgment.

Enter:

David H. Coar
United States District Judge

Dated: 1/17/01

---

[3] Because the Court finds that there is no evidence from which a jury could find that any of the defendants were deliberately indifferent to substantial risk of serious harm, it reaches neither the defenses of qualified immunity nor Officer Howard's specific defense that he was too remotely involved in the attack.